**Shirley BRANDON, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 86 Civ. 1999 (PKL).**

United States District Court,
S.D. New York.

Aug. 12, 1987.

Marshall Green, The Legal Aid Society, Bronx, N.Y., for plaintiff; Anthony V. Alfieri, of counsel.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, for defendant; Edward T. Ferguson, III, of counsel.

## OPINION & ORDER

LEISURE, District Judge:

The parties have cross-moved, pursuant to Fed.R.Civ.P. 12(c), for judgment on the pleadings in this action to review a denial of Social Security disability benefits.

## Factual Background

On August 31, 1984, plaintiff applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–33, claiming she has a disability caused by asthma, osteoarthritis, and hypertension, which has prevented her from working since November 11, 1983. The application was denied, both initially and on reconsideration, on the ground that plaintiff was not disabled and was capable of continuing to perform her job as a machine operator in the garment industry.

Plaintiff then requested a hearing on the matter, which was held on May 10, 1985, before an Administrative Law Judge (the "ALJ") of the Social Security Administration's Office of Hearings and Appeals. Plaintiff was represented by counsel at the hearing. On July 5, 1985, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act and thus was not eligible for disability benefits. On January 10, 1986, the Appeals Council of the Social Security Administration's Office of Hearings and Appeals denied plaintiff's request for review of the ALJ's decision, which thereupon became the final decision of the Secretary of Health and Human Services (the "Secretary" of "HHS"). Plaintiff commenced this action, pursuant to 42 U.S.C. § 405(g), on March 7, 1986. Plaintiff contends that: (1) the Secretary misapprehended the treating physician rule governing in the Second Circuit; and (2) the Secretary wrongly evaluated plaintiff's subjective complaints of pain.

## Treating Physician Rule

"The scope of review of a disability determination ... involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). The Court "must first decide whether HHS applied the correct legal principles in making the determination." *Id.* The Court "must then decide whether the determination is supported by 'substantial evidence.'" *Id.* (citing 42 U.S.C. § 405(g) (1982)). "Substantial evidence may be found whenever the record contains 'such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion.'" *Moore v. Secretary of Health and Human Services*, 778 F.2d 127, 130 (2d Cir.1985) (citation omitted).

"The expert opinion of a claimant's treating physician is entitled to particular weight." *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). *See also Bluvband v. Heckler*, 730 F.2d 886, 892–93 (2d Cir.1984); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano*, 572 F.2d 908, 912–13 (2d Cir.1978). It has been the rule in the Second Circuit "for the past 15 years that the expert opinion of a claimant's treating physician regarding his 'medical disability, i.e. diagnosis and nature and degree of impairment, is ... binding on the factfinder unless controverted by substantial evidence.'" *Hidalgo v. Bowen*, 822 F.2d 294, 296–97 (2d Cir.1987) (citation omitted). The cases in which the Court of Appeals for the Second Circuit has reversed the denial of benefits due to the ALJ's failure to apply properly the treating physician rule are legion. *Id.* *See also Havas v. Bowen*, 804 F.2d 783, 785–86 (2d Cir.1986).

The principal portion of the ALJ's decision in this case which can reasonably be interpreted as pertaining to the treating physician rule states as follows:

[A] preponderance of the evidence establishes that the claimant has minimal osteoarthritis of the hands, knees and lumbosacral spine. The undersigned Administrative Law Judge considered the physical assessment of Dr. Petersen-Baez of Hunts Points Multi-Service Center but notes that such assessment is not consistent with the findings noted in the records from that center. The undersigned therefore concludes that the physical assessment is not compatible with a preponderance of the evidence and concludes that the claimant retains the ability to perform a substantial amount of walking and standing and is able to use her hands for grasping and manipulating.

*See* Administrative Record ("AR") at 17. Although the ALJ agreed with the treating

physician that plaintiff has hypertension, osteoarthritis and asthma, the ALJ concluded that plaintiff has sufficient residual functional capacity to continue to perform her past work. AR at 18.[1]

The ALJ was required to accord " 'some extra weight' to the professional opinion of the treating physician," and could reject that opinion only if he "concluded that substantial evidence contradicted" it. *Johnson,* 817 F.2d at 986 (citation omitted). In this case, the ALJ examined parts of the record other than the report of the treating physician, Dr. F. Petersen-Baez, and found, by a preponderance of the evidence, that plaintiff has only "minimal osteoarthritis...." AR at 17. The ALJ then "considered" the treating physician's opinion, but termed it inconsistent with certain findings in the medical records before him. *Id.* The ALJ concluded that the treating physician's opinion was "not compatible with a preponderance of the evidence" and thus rejected it. *Id.*

In this case, the treating physician has examined plaintiff at least monthly since June 1, 1971. AR at 236. Yet the ALJ failed, as required, to provide "specific, legitimate reasons" for rejecting his opinion.[2] *See Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984); *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983). The ALJ merely stated that the treating physician's assessment was "not consistent" with certain unspecified findings in the medical records. This statement of reasons is insufficient to allow the Court to assess whether the treating physician's opinion was properly rejected.[3] *See Treadwell v. Schweiker,* 698 F.2d 137, 142 (2d Cir.1983); *Carnevale v. Gardner,* 393 F.2d 889, 891 (2d Cir.1968).

The Secretary argues that the Court must affirm his decision so long as the ALJ's ultimate conclusion is supported by substantial evidence in the record. *See, e.g.,* Defendant's Memorandum of Law at 6, 12–13. This argument has recently been

1. The treating physician stated that plaintiff cannot lift or carry more than five pounds. AR at 239. He also found that plaintiff is unable to use her right hand for repetitive simple grasping, and is unable to use either hand for repetitive fine manipulation and pushing and pulling of arm controls. AR at 240. Finally, the treating physician reported that plaintiff is unable to use her feet for repetitive movements. *Id.* Plaintiff testified that performance of her duties in her past work required such repetitive movements of the hands and feet. *See, e.g.,* AR at 41. She also testified that she was required to lift 20 to 25 pounds at a time. AR at 43. Finally, the treating physician reported that plaintiff can sit continuously for at most two hours and can sit for a total of at most four hours in an eight-hour work day. AR at 239. Plaintiff testified, however, that her past work entailed sitting for up to seven or eight hours per day. AR at 41. The ALJ made no explicit finding with regard to plaintiff's ability to sit for such a period. *See* AR at 17 ("[C]laimant retains the ability to perform a substantial amount of walking and standing....").

2. At the hearing, plaintiff's counsel argued that "great weight" should be accorded to the treating physician's opinion, but the ALJ responded that the doctor's report was "no[t] documented by any clinical reports," and that his conclusions were "not supported by clinical documented records." AR at 64. Where a claimant appears *pro se,* the ALJ cannot reject a treating

physician's report because it is conclusory without first informing the claimant of this proposed action and providing an opportunity to submit a more detailed statement. *Bluvband,* 730 F.2d at 895; *Echevarria v. Secretary of Health and Human Services,* 685 F.2d 751, 756 (2d Cir.1982); *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir.1980). In this case, the claimant was represented by counsel but the ALJ declined to accept counsel's offer of an additional report from the treating physician outlining the foundation for his conclusions. AR at 65. The ALJ also refused to subpoena certain pertinent medical records. AR at 66–67, 283. The ALJ thus failed to fulfill his duty to fully and fairly develop the record upon which his determination was made. *See Bluvband,* 730 F.2d at 895; *Donato v. Secretary of Health and Human Services,* 721 F.2d 414, 419 (2d Cir.1983); *Decker v. Harris,* 647 F.2d 291, 299 (2d Cir.1981). This duty "is not obviated by the presence of counsel representing the applicant...." *Decker,* 647 F.2d at 299 (citation omitted). The ALJ must "affirmatively assist the parties in developing the record ... with the recognition that '[t]he Social Security Act is a remedial statute which must be liberally applied; its intent is inclusion rather than exclusion.' " *Bluvband,* 730 F.2d at 892 (citation omitted).

3. Examination of the transcript of the hearing shows that the ALJ may possibly have been referring to an X-ray taken at the union health facility on February 15, 1984. AR at 62.

rejected by the Court of Appeals for the Second Circuit.

> Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles. The history of litigation concerning the treating physician rule regrettably precludes our indulging the decision makers in HHS with a presumption that in cases such as this the treating physician rule was faithfully applied and merely not mentioned.

*Johnson,* 817 F.2d at 986.[4]

### Evaluation of Pain

■ Plaintiff also contends that the ALJ wrongly evaluated her subjective complaints of pain. The ALJ rejected plaintiff's complaints of pain and other symptoms, even though corroborated in part by the reports of the treating physician and an "impartial consultant," and relied instead on the absence of "objective findings for the alleged complaints." AR at 16–17, 223–28, 236–41.[5] Where subjective symptoms are reported, the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment,

in light of the medical findings and other evidence, regarding the true extent of the pain alleged. *Compare McLaughlin v. Secretary of Health, Education and Welfare,* 615 F.2d 701, 705 (2d Cir.1980) and *Marcus v. Califano,* 615 F.2d 23, 27–28 (2d Cir.1979) *with Franklin v. Secretary of Health, Education and Welfare,* 393 F.2d 640, 642 (2d Cir.1968) and *Peterson v. Gardner,* 391 F.2d 208, 209–10 (2d Cir. 1968). If the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.[6] *See Tome,* 724 F.2d at 713; *Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1045 (2d Cir.1984); *Bluvband,* 730 F.2d at 894; *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir.1984).

■ In this case, the ALJ merely stated, with regard to plaintiff's testimony as a whole, that "claimant's allegations of experiencing pain are not consistent with a preponderance of the evidence and are not credible." AR at 18. The Court cannot discern from this conclusory statement whether the ALJ's determination is based on substantial evidence.[7] This uncertainty

---

4. In his review of the record for evidence in support of the ALJ's conclusion, defendant relies in part on the assessment of a consulting, non-examining physician as well as the comments of various lay observers. *See* Defendant's Memorandum of Law at 8–9 (citing AR at 17, 85–86, 108, 235). As noted *infra* at p. 9, lay observations are entitled to limited weight. Moreover, "[a] corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis." *Hidalgo,* 297 (citations omitted).

5. In *Bluvband,* the Court of Appeals for the Second Circuit held that there is no requirement that medical testimony be supported by objective clinical or laboratory findings. 730 F.2d at 893 (citations omitted). In briefing the instant motions, the parties have argued about whether this rule remains valid in the Second Circuit. *See, e.g.,* Defendant's Memorandum of Law at 8; Plaintiff's Reply Memorandum of Law at 4. It is unnecessary for the Court to address this

issue, however, since objective findings at least partially supporting the treating physician's opinion and the plaintiff's complaints are contained in the record. *See* AR at 181, 227, 237, 242–44. Moreover, in view of the ALJ's failure to fully develop the record, *see supra* note 2, the Secretary should not now be permitted to rely on a purported lack of objective findings in support of medical testimony. As previously noted, the ALJ declined to receive a supplementary report from Dr. Petersen-Baez setting forth the foundation for his conclusions. AR at 65.

6. It should be noted that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983) (citation omitted). Plaintiff in this case "worked as a machine operator in the garment industry for 36 years." AR at 16.

7. The ALJ also failed to address explicitly the treating physician's opinion that plaintiff suffers

is exacerbated by the ALJ's apparent reliance on his description, in an earlier portion of his decision, *see* AR at 17, of his own observations of plaintiff at the hearing. The rendition of an expert medical opinion is beyond the ALJ's competence. *Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir.1981). Accordingly, such observations are entitled to limited weight. *See De-Leon*, 734 F.2d at 935; *Rivera v. Schweiker*, 717 F.2d 719, 724 (2d Cir.1983); *Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 643 (2d Cir.1983).[8]

For the foregoing reasons, in order to insure that the correct legal principles are applied to the determination of plaintiff's disability claim and to allow the Court to decide whether the ALJ's determination is supported by substantial evidence, it is appropriate to remand this case to HHS for reconsideration and further development of the evidence in accordance with this opinion. *See, e.g., Johnson*, 817 F.2d at 986–87; *Parker*, 626 F.2d at 235.

SO ORDERED.

---

pain from, among other conditions, degenerative osteoarthritis. *See* AR at 236, 238. The Court does "not suggest that every conflict in a record [must] be reconciled by the ALJ," but does "believe that the crucial factors in any determination must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris*, 728 F.2d at 587 (citations omitted).

**8.** In this case, the ALJ stated that plaintiff "was able to move her arms and fingers" and "handled the bottles from her purse with normal grasping and holding and showed no impairment." AR at 17. Such observation and reliance by an ALJ, commonly known as the "sit and squirm" index, has been criticized by the courts. *See, e.g., Aubeuf*, 649 F.2d at 113 & n. 7 (quoting *Tyler v. Weinberger*, 409 F.Supp. 776, 789 (E.D.Va.1976)). The ALJ also stated that plaintiff "testified that she prepares food and cooks which shows an ability to perform fine and gross hand movements." AR at 17. In fact, however, plaintiff testified that her occasional cooking consists mostly of warming up "TV dinners." AR at 36, 57.