Maryellen URTZ, Plaintiff,

v.

John J. CALLAHAN,[1] Commissioner of Social Security,[2] Defendant.

No. 95–CV–0420.

United States District Court, N.D. New York.

May 22, 1997.

---

**1.** Effective February 28, 1997, John J. Callahan, Ph. D., became the Acting Commissioner. Therefore, he has been substituted as the defendant in this action. FRCP 25(d)(1).

**2.** Responsibility for Social Security cases has been transferred from the Secretary of Health and Human Services to the Commissioner of Social Security effective March 31, 1995. Social Security Independence and Program Improvement Act of 1994, Pub.L. No.103–296 (1994)(codified at 42 U.S.C. § 301 et seq.). The Commissioner of Social Security is therefore substituted for the Secretary of Health and Human Services. *Id.* § 106(d)(transition rules).

Maryellen Urtz, Averill Park, NY, Plaintiff, pro se.

Thomas J. Maroney, United States Attorney, Northern District of New York, Syracuse, NY (William H. Pease, Assistant United States Attorney, of counsel), for Defendant.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

This matter is brought pursuant to §§ 205(g) & 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Secretary of Health and Human Services ("Secretary"),[3] denying the plaintiff's claim of Supplemental Social Security Disability benefits and Social Security Disability Insurance. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted to this Court without oral argument.

## I. *PROCEDURAL HISTORY*

On March 4, 1993, the plaintiff filed an application for benefits under Title II and Title XVI of the Social Security Act ("Act").[4] The applications were denied originally and again following plaintiff's request for reconsideration. The plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On July 26, 1994, the ALJ after considering the case de novo, concluded that the plaintiff was not under a disability. The plaintiff requested that this decision be reviewed by the Appeals Council.

The decision of the ALJ became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on January 30, 1995. Plaintiff now brings this appeal.[5] This court must determine if the findings of the Secretary of Health and Human services are supported by substantial evidence.

## II. *FACTS*

This Court adopts the facts set forth in the defendant's brief with any exceptions as noted.

## III. *CONTENTIONS*

Plaintiff contends that the ALJ's decision was erroneous for the following reasons:

1. The ALJ failed to give the proper weight to the claimant's subjective complaints of pain.

2. The ALJ's decision is not supported by substantial evidence.

## IV. *DISCUSSION*

### 1. *Standard of Review*

A court's review of the Secretary's final decision is limited to determining whether there is substantial evidence in the record to support such decision. *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the

---

3. Although the responsibility for Social Security cases has been transferred from the Secretary of Health and Human Services to the Commissioner of Social Security, this decision is reviewing a case handled by the Secretary of Health and Human Services prior to the transfer. Thus, throughout this opinion, reference will be made to the Secretary of Health and Human Services ("Secretary").

4. Plaintiff alleges that she has been disabled since September 16, 1992. Therefore, regarding the claim for Title II benefits, plaintiff must show

she was disabled between the alleged date of onset and December 31, 1996.

5. On April 24, 1996, the plaintiff pursuant to her appeal submitted new evidence. The evidence consisted of additional x-rays, a medical report from 1992, and the opinion of her treating chiropractor. However, the plaintiff has failed to show that this new evidence is material or that there is good cause for its admission. Consequently, the proffer of new evidence is denied.

evidence must also include that which detracts from it's weight." *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988)(citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951), *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983)). However, a reviewing court must not substitute its interpretation of the administrative record so long as there exists substantial support for the decision in the record. *Id.*

Additionally, the scope of review involves determining *both* whether the Secretary has applied the correct legal standard, and whether the determination is supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). Thus, where there is a reasonable basis for doubting whether the Secretary applied the appropriate legal standards, even if the ultimate decision may be arguably supported by substantial evidence, the Secretary's decision may not be affirmed. *Id.* at 986.

The court has authority to reverse with or without remand. 42 U.S.C. §§ 405(g), 1383(c)(3). Remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Marcus v. Califano,* 615 F.2d 23 (2d Cir.1979)(remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability); *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir.1975)(remanded to permit claimant to produce further evidence). Reversal is appropriate, however, when there is "pervasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose. *Parker,* 626 F.2d at 235; *Simmons v. United States*

*R.R. Retirement Bd.* 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Secretary of HHS,* 705 F.2d 638, 644 (2d Cir.1983)(reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years; remand would likely result in further lengthening the "painfully slow process" of determining disability).

### 2. *Five-Step Disability Determination*

The regulations of the Secretary mandate that the ALJ follow a five step evaluation process to determine whether an individual is disabled.[6] *See* Social Security Admin., HHS Federal Old-age, Survivors and Disability Insurance Regulations, §§ 404.1520; 416.920. Step One requires the ALJ to determine whether the claimant is presently engaging in substantial gainful activity ("SGA"). §§ 404.1520(b), 416.920(b). If a claimant is engaged in SGA, he will not be considered disabled. If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P. §§ 404.1520(d), 416.920(d). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled. *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir.1984). If the claimant is not presumptively disabled, at Step Four the ALJ must consider whether claimant's residual functional capacity ("RFC") precludes the performance of her past relevant work. §§ 404.1520(e), 416.920(e). At Step Five, the ALJ determines whether the claimant can do any other work. §§ 404.1520(f), 416.920(f).

**6.** A claimant will be considered disabled if he demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In addition, the claimant's

> Physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his past relevant work, but cannot considering his age, education, and work expe-

rience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Therefore, plaintiff must not only carry a medically determinable impairment, but an impairment so severe as to prevent him from engaging in any kind of substantial gainful work which exists in the national economy.

The claimant has the burden of showing he cannot perform past relevant work. *Ferraris*, 728 F.2d at 584. However, once the claimant meets that burden, the Secretary can deny benefits only by showing, by specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Secretary of HHS*, 910 F.2d 64, 65 (2d Cir.1990); *Ferraris*, 728 F.2d at 584. In making this showing the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claimant can perform other work existing in the national economy. §§ 404.1520(f), 416.920(f); *see New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir.1990); *see also Ferraris*, 728 F.2d at 585 (four factors used to determine if claimant can perform other work: age, education, physical ability and work experience)(citing 42 U.S.C. § 423(d)(2)(A)).

In the instant case, Step One is met because the plaintiff has not engaged in substantial gainful employment since September 16, 1992. (Tr. 27). The ALJ in applying Step Two determined that the plaintiff has had severe impairments secondary to multiple arthralgia and back pain. (Tr. 27). However, in applying the Third Step, the ALJ determined that the plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 27). Finally, in applying Step Four, the ALJ determined that the plaintiff was capable of performing a full range of medium work which included her past relevant work. (Tr. 27). Therefore, the ALJ found that the plaintiff was not disabled. The ALJ's findings at the fourth step are in contention.

### 3. Step Four—Determination of Claimant's Ability to Perform Past Relevant Work

In the Step Three analysis, plaintiff was not found to have an impairment listed in Appendix 1, Subpart P. Thus, plaintiff was not presumptively disabled, and the ALJ was required in Step Four to determine whether plaintiff's residual functional capacity (RFC) precluded performance of past relevant work

### A. Residual Functional Capacity Standard of Review

RFC is what a claimant is capable of doing despite his or her impairments. §§ 404.1545(a), 416.945(a). The RFC is determined by considering all relevant evidence, consisting, inter alia, of physical abilities; symptoms including pain;[7] and descriptions, including that of the claimant, of limitations which go beyond the symptoms. §§ 404.1545, 416.945. Physical abilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. §§ 404.1545, 416.945; *see* §§ 404.1567, 404.1569a, 416.967; 416.969a.

Thus, to determine whether a claimant can do a certain category of work, the ALJ must determine plaintiff's strength limitations, or exertional capacity, which include the ability to sit, stand, walk, lift, carry, push and pull. §§ 404.1569a(a), 416.969a(a). Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." §§ 404.1569a(c)(1)(vi), 416.969a(c)(1)(vi). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen*, 737 F.Supp. 180, 183 (N.D.N.Y.1990). In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Id.; Ferraris*, 728 F.2d at 587; *Sullivan v. Secretary of HHS*, 666 F.Supp. 456, 460 (W.D.N.Y.1987); *see* §§ 404.1546, 416.946. The RFC is then used to determine particular types of work a claimant may be able to perform. §§ 404.1545(a), 416.945(a).

Jobs in the national economy are classified by their physical exertion requirements as "sedentary," "light," "medium," "heavy," and

---

7. Symptoms such as pain are considered when determining the RFC as well as in determining whether a claimant has a severe impairment, and at all remaining steps in the disability determination. 20 C.F.R. § 416.929(a), (d).

"very heavy." §§ 404.1567, 416.967. Medium work requires the ability to lift no more than fifty pounds, with frequent lifting or carrying of objects weighing twenty-five pounds. §§ 404.1567(c), 416.967(c). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." §§ 404.1566(a), 416.966(a). However, "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered" to exist in the national economy. §§ 404.1566(b), 416.966(b). If the claimant can do work that exists in the national economy, a finding of not disabled will be made. §§ 404.1566(b), 416.966(b). However, if a claimant can do work that does not exist in the national economy, a finding of disability will be made. *Id.*

When a claimant's impairment and related symptoms, such as pain, only impose exertional limitations and the claimant's vocational profile is listed in an Appendix 2 Rule, the Rule is applied directly to determine disability status. §§ 404.1569a(b), 416.969a(b). However, when combined exertional and non-exertional limitations exist, the Appendix 2 Rules provide only a framework for disability determination unless a rule directs a conclusion of disability. §§ 404.1569a(d), 416.969a(d). Thus, when a claimant is incapable of the full range of a certain category of work, such as sedentary work, the evaluation of disability must be made on an individual basis rather than by a mechanical application of the Appendix 2 Rules. *Nelson v. Bowen,* 882 F.2d 45, 46 (2d Cir.1989). Moreover, the ALJ must consider subjective complaints of pain[8] throughout this evaluation process. §§ 404.1529(a), (d), 416.929(a), (d).

The ALJ is "not obliged to accept without question the credibility of such subjective evidence." *Marcus,* 615 F.2d at 27; *Peterson v. Gardner,* 391 F.2d 208, 209 (2d Cir. 1968); *Spicer v. Califano,* 461 F.Supp. 40, 47–48 (N.D.N.Y.1978). The ultimate question, however, is whether the claimant's affliction did, in view of his individual physical and mental makeup, cause him symptoms which became so intensely severe to him that, as he testified, it forced him to quit working. *Marcus,* 615 F.2d at 27. Further, "[i]t is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where ... it is supported by objective medical evidence." *Simmons v. United States R.R. Retirement Bd.,* 982 F.2d 49, 56 (2d Cir.1992)(quoting *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983) (citations omitted)). An ALJ rejecting subjective testimony concerning pain and other symptoms "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen,* 666 F.Supp. 604, 608 (S.D.N.Y.1987); *see Valente v. Secretary of HHS,* 733 F.2d 1037 (2d Cir.1984).

## B. The ALJ's Finding That Plaintiff is Capable of Performing Past Relevant Work

In the instant case, the ALJ determined that the plaintiff was not disabled because she had the residual functional capacity to perform medium work which included her past relevant work as a teacher.[9] (Tr. 27).

---

8. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all the evidence required to be furnished, ... would lead to a conclusion that the individual is under a disability.
42 U.S.C. § 423(d)(5)(A).

9. The ALJ incorrectly determined that plaintiff's past relevant work was as a teacher. In actuality, the plaintiff's past relevant work was as a "Child Care Attendant" which has a medium exertional level. However, the ALJ's oversight is not flagrant. The record establishes that the plaintiff, after receiving her bachelor's degree with a major concentration in secondary education, became certified to teach as a public school teacher. (Tr. 39). Moreover, the plaintiff was employed from March 1991, until October 1991, as a substitute teacher. (Tr. 235). She left this job in October 1991, to begin full time work as a child care attendant in hopes of gaining valuable experience which would allow her to

The ALJ based this conclusion on the medical evidence contained in the record including the various physician reports and plaintiff's own subjective complaints of pain.

Beginning in June 1992, a report by Dr. Arlene Pericak ("Pericak"), noted that the plaintiff had been complaining of chest pain. (Tr. 225). However, chest x-rays were normal with no evidence of active pleural or parenchymal disease or acute cardiopulmonary disease.[10] (Tr. 219, 225). Pericak's neurological assessment noted that plaintiff's cranial nerves II–XII were grossly intact; cerebellum function was normal; good pulses in the arms; negative for thoracic outlet syndrome; and clear lungs. (Tr. 225). However, Pericak found tenderness in plaintiff's neck and shoulders, and she therefore requested that she return for a follow-up physical examination. (Tr. 225). Upon further examination, Pericak suggested that the plaintiff be referred to a Rheumatologist.

The record indicates that in August 1992, the plaintiff had x-rays of her spine. (Tr. 205). These x-rays revealed that she was suffering from spondylolisthesis, *moderate* narrowing of the L5–S1 intervertebral disc space, and a *mild* encroachment of the C5–C6 intervertebral foramen. (Tr. 205). However, no spondylolysis could positively be identified and the intravertebral disc space, intravertebral bodies, pedicles, and the sacroiliac joints were unremarkable. (Tr. 205). Consequently, three months later the plaintiff visited Dr. Richard Brown ("Brown"), for an arthritis consultation. (Tr. 190). Brown noted that the plaintiff had no significant deformities in the hand, range of motion of both wrists was within normal limits, trace tenderness over the right elbow, slightly limited range of motion in the shoulder, normal range of motion of the cervical spine except slightly reduced lateral flexion, and normal dorsal and lumbosacral spine motion. (Tr. 191). The overall assessment of plaintiff's musculoskeletal examination was normal.

(Tr. 191). In fact, Brown stated that the plaintiff, one week following the examination, was cleared to go back to work. (Tr. 192).

Subsequent to the arthritic consultation, as Pericak had suggested, the plaintiff was examined by a Rheumatologist, Dr. James M. Strosberg, ("Strosberg"). Strosberg diagnosed the plaintiff with fibrositis and degenerative arthritis. (Tr. 193). While the plaintiff displayed tenderness in her trapezius muscles, Strosberg noted a full range of motion in the neck, shoulders, and elbows. (Tr. 193). Strosberg opined further that the plaintiff's prognosis remained good, and that she should avoid any job which involves repetitive motion of her hands. (Tr. 194). The plaintiff was further examined on April 26, 1993, by Dr. William Rogers ("Rogers"). (Tr. 162). Rogers' inspection of the plaintiff's spine revealed normal symmetry with no spinal tenderness, no tenderness in the lumbar soft tissue, full range of motion in the cervical spine and shoulders, and normal elbows, wrists, and hands with no signs of degenerative changes in these joints. (Tr. 163).

On August 5, 1993, the plaintiff was examined by an orthopedic specialist, Dr. Richard Katz ("Katz"). (Tr. 169). Katz noted a normal spinal alignment, full range of motion with no restriction, negative straight leg raising, normal neurological examination of the lower extremities, and no evidence of osteoarthritis of the joints of her right hand. (Tr. 169). Although Katz stated that the plaintiff had tenderness and pain in the elbow, he ultimately concluded that she did not have a physical disability. (Tr. 169). In fact, it was his opinion that her physical ailments would not prevent her from performing most activities except typing and heavy lifting. (Tr. 169–70). Katz's opinion is additionally supported by an assessment of plaintiff's physical capabilities. A residual physical functional capacity assessment form indicated that the plaintiff is capable of occasionally

finally access a teaching position. (Tr. 233, 235). Considering the similarities of the two positions, and the ALJ's determination that plaintiff was capable of performing jobs at medium exertion levels, a remand to clarify this issue only unnecessarily extends the already lengthy disability determination process.

**10.** Following the chest x-ray, the plaintiff in September of 1992, had a normal echocardiogram. (Tr. 206).

lifting fifty pounds; frequently lifting twenty-five pounds; standing or walking for a total of six hours in an eight hour day; sitting for about six hours in an eight hour day; and pushing and pulling unlimited. (Tr. 77). In addition, the plaintiff may occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 78). These physical capabilities are consistent with the ability to perform medium work. *See* §§ 404.1567(c), 416.967(c).

On August 16, 1994, an MRI of the plaintiff's spine revealed *mild* disc bulging at the C5–6 and C6–7 interspaces with a *mild* herniated cerebellar tonsil below the posterior lip of the foramen magnum. (Tr. 17). Additionally, in September 1994, the plaintiff underwent an electromyography of the right upper extremities, which resulted in *mild* abnormal findings. (Tr. 16). Plaintiff's examining physician, Dr. Jeffrey J. Burdick ("Burdick"), stated that there was evidence of a *mild* acute and chronic denervation change in the muscles innervated by the C8–T1 nerve root. (Tr. 16). However, he further stated that there was no evidence of nerve entrapment or neuropathy in the right upper extremity. (Tr. 16). Contrary to plaintiff's protestations, the MRI and the electromyography do not demonstrate that the plaintiff is disabled. In fact, they are not substantially inconsistent with the remaining medical evidence contained in the record.

Consequently, there is substantial evidence in the record to support the ALJ's determination that the plaintiff is capable of performing medium work which includes her past relevant work.

The ALJ considered the plaintiff's subjective claims of pain as required by 20 C.F.R. §§ 404.1529, 416.929. The plaintiff complained that she experiences headaches including pain in her back, shoulders, elbows, ankles, right leg, and arms. (Tr. 26, 41). She further testified that she cannot stand or sit for long periods of time. (Tr. 49). However, the ALJ found these complaints to be exaggerated, and therefore, concluded that she was not reliable in reporting her symptoms. (Tr. 26).

The ALJ relies upon inconsistencies among the medical evidence, the plaintiff's subjective complaints of pain, and her ability to perform numerous activities. As stated above, the medical evidence does not support plaintiff's claim that she is disabled and incapable of performing substantial gainful activity. Also, the evidence demonstrates that the plaintiff leads an active life, participating in teaching, book writing, letter writing, socializing, and traveling. (Tr. 26). These two factors lead the Court to the conclusion that there are legitimate reasons to support the ALJ's rejection of the plaintiff's subjective complaints of pain.

The plaintiff testified that she is capable of driving, doing her own housework,[11] and grocery shopping. (Tr. 48, 49). In fact, she stated that she can lift fairly well when she is able to get her hands underneath an object. (Tr. 49). While she stated that she could not sit or stand for long periods of time, the record establishes that she is not under the regular care of a physician or using pain medication on a consistent basis. (Tr. 46). Likewise, she testified that she maintains the manual dexterity to operate an automobile and develop her own photography pictures. (Tr. 48, 52).

She also testified that she remains active with her church, volunteering her time to participate in the writing of the church's sesquicentennial history. In addition, she belongs to various historical societies including the Capital District Humanist Society and the Henry David Thoreau Society. (Tr. 50, 51). As a member of the Thoreau Society, she travels to Concord, Massachusetts, every year for the annual meeting. (Tr. 51). Moreover, in March 1994, in a letter written by the plaintiff, she indicated that she continued to be active in Adult Education classes, preparing several presentations for the class. (Tr. 18).

The plaintiff's ability to actively participate in numerous activities despite the alleged debilitating pain, contradicts her subjective complaints of pain. The ALJ's determina-

---

**11.** The plaintiff's ability to perform various jobs around the house is further evidenced by a letter written to her mother in December 1993. In this letter, the plaintiff stated that she was doing the wash and would later mail various Christmas gifts and packages to the family. (Tr. 317).

tion that plaintiff exaggerated her subjective complaints of pain is supported by substantial evidence.

## V.  *CONCLUSION*

Accordingly, it is

ORDERED that the decision denying the plaintiff disability benefits pursuant to Title II and Title XVI of the Act is AFFIRMED.

IT IS SO ORDERED.