**Ida R. MARKS, Plaintiff,**

v.

**Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.**

No. 96–CV–1570.

United States District Court, N.D. New York.

July 9, 1998.

---

1.  Effective September 29, 1997, Kenneth S. Ap-  fel, acting Commissioner.  FRCP 25(d)(1).

**320**

John L. Bardsley, Cortland, NY, for plaintiff.

Thomas J. Maroney, United States Attorney, Syracuse, NY, for defendant, William H. Pease, Assistant U.S. Attorney, of counsel.

### MEMORANDUM—DECISION and ORDER

HURD, United States Magistrate Judge.

This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security ("Commissioner"), denying the plaintiff's claim of Social Security Disability Insurance. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted to this court without oral argument.

### I.  PROCEDURAL HISTORY

On May 24, 1994, the plaintiff filed an application for disability insurance benefits, alleging that as a result of pain in her low back, right leg and foot, and right shoulder, she was disabled and incapable of working as of January 31, 1994. Her initial application was denied on June 22, 1994, and again following a request for reconsideration. As a result, on January 11, 1995, the plaintiff obtained a hearing before an Administrative Law Judge ("ALJ"). On January 24, 1996, following plaintiff's hearing, ALJ Franklin T. Russell determined that the plaintiff was capable of performing sedentary work and therefore not entitled to disability insurance benefits.

On August 21, 1996, the ALJ's decision denying plaintiff benefits became the final decision of the Commissioner when the Appeals Council rejected plaintiff's request for review of the January 24, 1996 hearing decision. Plaintiff now brings this appeal. This court must determine if the findings of the Commissioner of Social Security are supported by substantial evidence.

### II.  FACTS

This Court adopts the facts set forth in the plaintiff's brief with any exceptions as noted.

### III.  CONTENTIONS

Plaintiff contends that the ALJ's decision was erroneous because the plaintiff was entitled to a finding of disability based on her back condition and attending symptoms of disabling pain.

### IV.  DISCUSSION

#### 1.  Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence in the record to support such decision. *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Rivera*, 923 F.2d at 967(quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951), *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983)).

However, a reviewing court must not substitute its interpretation of the administrative record so long as there exists substantial support for the decision in the record. *Williams*, 859 F.2d at 258.

Additionally, the scope of review involves determining *both* whether the Commissioner has applied the correct legal standard and whether the determination is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). Thus, where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standard, even if the ultimate decision may be arguably supported by substantial evidence, the Commissioner's decision may not be affirmed. *Johnson*, at 986.

### 2. *Five–Step Disability Determination.*

The regulations of the Commissioner mandate that the ALJ follow a five step evaluation process to determine whether an individual is disabled.[2] *See Singletary v. Apfel*, 981 F.Supp. 802, 805 (W.D.N.Y.1997) (citing 20 C.F.R. § 404.1520; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982)). Step One requires the ALJ to determine whether the claimant is presently engaged in substantial gainful activity ("SGA"). § 404.1520(b). If a claimant is engaged in SGA, they will not be considered disabled. If the claimant is not engaged in SGA, Step Two requires the ALJ to determine whether the claimant has a severe impairment. § 404.1520(c). If the claimant is found to suffer from a severe impairment, Step Three requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P. § 404.1520(d). If the impairment meets or equals a listed impairment, the claimant is presumptively disabled.

*Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.1984). If the claimant is not presumptively disabled, at Step Four the ALJ must consider whether claimant's residual functional capacity ("RFC") precludes the performance of his past relevant work. § 404.1520(e). At Step Five, the ALJ determines whether the claimant can do any other work. § 404.1520(f).

The claimant has the burden of showing that she cannot perform past relevant work. *Ferraris*, 728 F.2d at 584. However, once the claimant meets that burden, the Commissioner can deny benefits only by showing, by specific reference to medical evidence, that the claimant can perform some less demanding work. *See White v. Secretary of HHS*, 910 F.2d 64, 65 (2d Cir.1990); *Ferraris*, 728 F.2d at 584. In making this showing the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claimant can perform other work existing in the national economy. § 404.1520(f); *see New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990); *see also Ferraris*, 728 F.2d at 585 (four factors used to determine if claimant can perform other work: age, education, physical ability, and work experience) (citing 42 U.S.C. 423(d)(2)(A)).

In the instant case, the ALJ found that the plaintiff met the requirements of Step One because she has not engaged in substantial gainful employment since January 31, 1994. (Tr. 18). The ALJ also determined that the plaintiff suffered from severe musculoskeletal impairments. *Id.* However, in applying the Third Step, the ALJ determined that the plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to one listed in Appendix 1,

---

**2.** A claimant will be considered disabled if they demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In addition, the claimant's

> Physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his past relevant work, but cannot considering his age, education, and work expe-

rience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Therefore, plaintiff must not only carry a medically determinable impairment, but an impairment so severe as to prevent him from engaging in any kind of substantial gainful work which exists in the national economy.

Subpart P, Regulations No. 4. *Id.* Following Step Four, the ALJ concluded that the plaintiff was not capable of performing her past relevant work as a janitor. (Tr. 19). Finally, at Step Five the ALJ determined that the plaintiff had the capacity to perform sedentary work activities. Thus, the ALJ found that the plaintiff was not disabled as defined under the Act. *Id.* The ALJ's findings at the Fifth Step are in contention.

### 3. *Step Five—The Claimant is Capable of Performing Other Work*

As discussed above, the ALJ at Step Four determined that the plaintiff was not capable of performing her past relevant work. (Tr. 19). As a result, the ALJ proceeded to Step Five and subsequently found that the plaintiff retained the capacity to perform a full range of sedentary work. *Id.* Notwithstanding, the plaintiff maintains that she is entitled to a finding of disability based on her back condition and attending symptoms of disabling pain.

### a. *Residual Functional Capacity Standard of Review*

RFC is what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a). The RFC is determined by considering all relevant evidence, consisting, inter alia, of physical abilities; symptoms including pain;[3] and descriptions, including that of the claimant, of limitations which go beyond the symptoms. § 404.1545. Physical abilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis. § 404.1545; *see* 404.1567; 404.1569a.

■■■ Thus, to determine whether a claimant can do a certain category of work, the ALJ must determine plaintiff's strength limitations, or exertional capacity, which include the ability to sit, stand, walk, lift, carry,

push and pull. § 404.1569a(a). Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." § 404.1569a(c)(vi). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *LaPorta v. Bowen,* 737 F.Supp. 180, 183 (N.D.N.Y.1990). In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Ferraris,* 728 F.2d at 587; *LaPorta,* 737 F.Supp. at 183; *Sullivan v. Secretary of HHS,* 666 F.Supp. 456, 460 (W.D.N.Y.1987); *see* § 404.1546. The RFC is then used to determine particular types of work a claimant may be able to perform. § 404.1545(a).

■■■ Jobs in the national economy are classified by their physical exertion requirements as "sedentary," "light," "medium," "heavy," and "very heavy." § 404.1567. Sedentary work requires the ability to lift no more than ten pounds, to sit for extended periods of time, and to walk and stand occasionally.[4] § 404.1567(a). When a claimant's impairment and related symptoms, such as pain, only impose exertional limitations and the claimant's vocational profile is listed in an Appendix 2 Rule, the Rule is applied directly to determine disability status. § 404.1569a(b). However, when combined exertional and nonexertional limitations exist, the Appendix 2 Rules provide only a framework for disability determination unless a rule directs a conclusion of disability. § 404.1569a(d). Thus, if a claimant is incapable of the full range of a certain category of work, the evaluation of disability must be made on an individual basis rather than by a mechanical application of the Appendix 2 Rules. *Nelson v. Bowen,* 882 F.2d 45, 46 (2d Cir.1989).

---

**3.** Symptoms such as pain are considered when determining the RFC as well as in determining whether a claimant has a severe impairment, and at all remaining steps in the disability determination. 20 C.F.R. § 404.1529(a), (d).

**4.** Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and

small tools. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a). In particular, a sedentary job is defined as one which involves six hours of sitting and two hours of standing and walking in an eight hour workday. *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir. 1996).

Throughout the evaluation process, the ALJ must consider subjective complaints of pain. § 404.1529(a), (d). The ALJ, though, is "not obliged to accept without question the credibility of such subjective evidence." *Marcus*, 615 F.2d at 27; *Peterson v. Gardner*, 391 F.2d 208, 209 (2d Cir.1968); *Spicer v. Califano*, 461 F.Supp. 40, 47–48 (N.D.N.Y. 1978). The ultimate question, however, is whether a claimant's affliction did, in view of their individual physical and mental makeup, cause symptoms which became so intensely severe that, as they testified, it forced them to quit working. *Marcus*, 615 F.2d at 27. Further, "[i]t is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where ... it is supported by objective medical evidence." *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir.1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir.1983) (citations omitted)). An ALJ rejecting subjective testimony concerning pain and other symptoms "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987); *see Valente v. Secretary of HHS*, 733 F.2d 1037 (2d Cir.1984).

Age, education, past work experience, and transferability of skills are vocational factors to be considered. A person under age fifty is considered a "younger person," whose age will not "seriously affect [a claimant's] ability to adapt to a new work situation." § 404.1563(b). Education as a vocational factor is seen to indicate the ability to meet job requirements such as reasoning, communication, and arithmetic. § 404.1564(a). A person with education between seventh grade and eleventh grade is generally not considered capable of performing semi-skilled through skilled work. § 404.1564(b)(3). Similarly, recent work experience may indicate an ability to do a similar kind of work. § 404.1565(a).

### b. *The ALJ's Finding That Plaintiff is Capable of Sedentary Work*

In the instant case, the ALJ determined that the plaintiff had the residual functional capacity to perform a full range of sedentary work activities. (Tr. 19). In making this determination, the ALJ relied upon the reports of the physicians who treated the plaintiff; the lack of objective medical findings to support plaintiff's allegations of disabling pain; and the plaintiff's ability to perform various activities involving daily living. A review of the record confirms that the ALJ properly assessed the evidence and supported the decision with substantial evidence.

Between 1983 and 1994, the plaintiff was primarily treated by an orthopedic surgeon, Frank C. Baldwin ("Baldwin"). (Tr. 125–139). On April 29, 1983, the plaintiff's initial visit, Baldwin reported that the plaintiff complained of low back pain radiating to the right leg. (Tr. 125). Upon examination of the x-rays, it was reported that the lumbosacral spine appeared normal. *Id.* Approximately two months later, Baldwin's office notes reflect that the plaintiff continued to experience considerable pain, causing Baldwin to suspect a disc problem with the L4, 5 and L5, S1 areas. (Tr. 126). As a result, Baldwin suggested that the plaintiff undergo nerve studies. *Id.* In July of 1983, Baldwin reported that the EMG studies were negative and that the plaintiff's problem had resolved, allowing her an opportunity to return to work. (Tr. 126–127). Nevertheless, the plaintiff returned in January 1984, complaining of posterior right thigh pain after sitting or standing in one position for an extended period of time. (Tr. 127). Upon examination, Baldwin reported that the plaintiff had no difficulty with walking and showed very little in the way of positive findings. *Id.* In fact, Baldwin suggested that she be seen when she experienced pain, otherwise, he did not see any reason that she should be considered disabled. *Id.*

The record establishes that the plaintiff next visited Baldwin in February 1987, again complaining of low back pain. (Tr. 128). However, Baldwin reported that upon examination the plaintiff had good range of motion of the lumbosacral spine and a negative neurological exam. *Id.* Although Baldwin opined that the plaintiff had mild degenerative disc disease, it was his belief that the plaintiff could live and work with the level of discomfort. *Id.* In August 1992, the plaintiff com-

plained of low back pain after slipping at work. (Tr. 130). However, x-rays of the plaintiff's lumbosacral spine again revealed no abnormalities, normal alignment, and good disc space. *Id.* In December 1993, Baldwin reported that the plaintiff was continuing to work as a janitor; was able to walk for exercise; and was capable of lifting one hundred pounds sometimes. (Tr. 132). In 1994, the plaintiff continued to complain of back pain radiating down her right leg and into the foot. (Tr. 133). Baldwin stated that the plaintiff had tendinitis of the right shoulder and neuritis of the right leg. *Id.* Although an MRI failed to show any evidence of a pathology, Baldwin opined that the plaintiff suffered from degenerative disc disease. (Tr. 133–134).

Between May 1994 and January 1995, the record indicates that the plaintiff had three separate orthopedic consultations with Doctor Mathew D. Tomaiuoli ("Tomaiuoli"). (Tr. 122). On May 23, 1994, Tomaiuoli reported that an MRI of the plaintiff's back revealed some bulging but no herniation. (Tr. 123). As a result, Tomaiuoli recommended epidural blocks and physical therapy. *Id.* Nevertheless, Tomaiuoli indicated that the overall prognosis remained good, and that the plaintiff was capable of performing sedentary clerical type work. *Id.* On December 8, 1994, the plaintiff visited Tomaiuoli for a second consultation, again complaining of increased right leg pain with tingling in the left leg. (Tr. 164). Tomaiuoli reported that the plaintiff was feeling worse, leading him to suspect that plaintiff had ruptured her bulging disc. (Tr. 165). Until the results of the MRI were known, Tomaiuoli stated that the plaintiff's prognosis remained guarded. *Id.* Finally, on April 27, 1995, the plaintiff met with Tomaiuoli for a third orthopedic consultation. (Tr. 223). Tomaiuoli, following information that

the results of the MRI were negative, opined that the plaintiff suffered from a chronic lumbosacral strain with radiculopathy. (Tr. 224). As a result, Tomaiuoli stated that the plaintiff was capable of performing clerical work with no lifting or bending, but sitting and standing at will. *Id.*

In addition to Baldwin and Tomaiuoli, various reports from other treating physicians support the ALJ's proposition that the plaintiff is not precluded from performing sedentary work activities.[5] For example, on December 9, 1993, the plaintiff was evaluated by Doctor John J. Gartman ("Gartman") for a Workman's Compensation claim. (Tr. 179). Through the evaluation, Gartman found that the plaintiff ambulated without difficulty, walked well on heels and toes, had no palpable abnormality over the lumbar spine, and presented no paraspinal muscle spasm. (Tr. 179–180). Although Gartman found no mechanical or neurological findings, his final opinion was that plaintiff suffered from chronic low back pain. (Tr. 180). Likewise, Doctor Albert M. Murtland, who examined the plaintiff on behalf of the Guthrie Clinic, LTD., indicated that the plaintiff complained of back pain with some radicular symptoms, but demonstrated no neurological findings, no motor weakness, no measurable atrophy or leg inequality, and a normal MRI. (Tr. 140). Though plaintiff also suffered from asthma and bronchitis, Doctor Elliot Rubinstein reported in 1994 that the plaintiff's throat, chest, and nose were clear, and that plaintiffs asthma was stable and improved. (Tr. 196, 198, 199, 200, 209). Finally, following a April 13, 1994 neurological evaluation, Doctor Jody Stackman ("Stackman"), opined that the plaintiff only suffered from low back pain. (Tr. 118, 120). However, as other physicians reported, Stackman found that the

---

5. The only medical report that definitively indicated that the plaintiff was not capable of performing even sedentary work was from Doctor Jose R. Lopez ("Lopez"). (Tr. 171–177). On September 14, 1995, Lopez reported that the plaintiff was capable of lifting and carrying five pounds occasionally and two pounds frequently; standing or walking for one hour (only thirty minutes without interruption) in an eight hour workday; sitting for three hours (only thirty minutes without interruption) in an eight hour workday; and occasionally climbing, balancing, stooping, crouching, kneeling, and crawling. (Tr. 171–172). However, the ALJ properly discounted Lopez's opinion because it was inconsistent with other substantial evidence contained in the record, not supported by objective medical evidence, and based upon a treating relationship which involved only two visits. (Tr. 17). Moreover, the opinion of Lopez is not entitled to controlling weight under the treating physician rule. Consequently, the ALJ's determination to not give controlling weight to the opinion of Lopez is supported by substantial evidence.

examination of the plaintiff was remarkable for a nontender back, no piriformis muscle tenderness or sciatic notch tenderness, and good lumbar flexion, extension, lateral flexion, and rotation. (Tr. 120). Stackman ultimately intimated that an absence of clinical findings raised the question as to whether the plaintiff might be a malingerer. *Id.* Consequently, Stackman performed nerve conduction studies on April 28, 1994, which resulted in normal findings without evidence of a peroneal or tibial neuropathy or a lumbosacral radiculopathy. (Tr. 139). Thus, Stackman ruled out lumbosacral radiculopathy and right tibial-peroneal neuropathy. *Id.*

The ALJ's determination that the plaintiff is capable of performing a full range of sedentary work is further bolstered by the lack of objective medical evidence to support plaintiff's claim of disabling pain. For example, on November 12, 1990, the plaintiff underwent an MRI of the lumbar spine which evidenced the possibility of some minimal spinal stenosis. (Tr. 135). In particular, the MRI demonstrated that the plaintiff had some mild midline disc bulging at all areas. *Id.* However, the disc spaces were essentially maintained and the intervertebral discs demonstrated normal signal. *Id.* Notwithstanding, the MRI was believed to be within normal limits. *Id.* On March 23, 1994, the plaintiff had radiographs and an additional MRI of the lumbosacral spine, resulting in a finding that suggested that the lumbar discs were normal with no evidence of herniation. (Tr. 138). Consequently, the objective findings neither contradict the opinion that plaintiff is able to perform a full range of sedentary work, nor corroborate her subjective complaints of disabling pain.

Finally, the ALJ determined that the ability to perform various activities involving daily living demonstrates that the plaintiff's capacity for sedentary work activity was not compromised. (Tr. 17). For instance, on May 1, 1994, in a disability report form, the plaintiff indicated that she was able to cook from an hour to forty-five minutes twice a day; clean or do laundry for a half hour a

day three times a week; shop for an hour a day once a week; weed her flower bed for a half hour a day once a week; and drive an automobile for twenty to forty-five minutes. (Tr. 104, 107). In addition, on September 15, 1995, the plaintiff testified that she was capable of sweeping or mopping the floor, doing laundry, walking approximately two thousand feet, and riding in an automobile for an hour and fifteen minutes. (Tr. 58, 59). The plaintiff also stated that she was able to take care of her personal needs, lift a ten pound bag of potatoes, and knit and crochet.[6] (Tr. 57, 58). The plaintiff's ability to perform various activities is consistent with the objective medical evidence and supports the opinions of the treating physicians.

## V. CONCLUSION

The ALJ's determination that plaintiff is capable of performing a full range of sedentary work is supported by substantial evidence. The opinions of the physicians, the objective medical evidence, and plaintiff's description of her daily activities do not support a conclusion of disabled, but rather demonstrate an ability to perform a full range of sedentary work.

Accordingly, it is

ORDERED that the decision denying the plaintiff disability benefits pursuant to Title II of the Act is AFFIRMED.

IT IS SO ORDERED.

---

6. The plaintiff testified at the hearing that she was unable to work in her flower garden. This testimony is contrary to the statement she provided on May 1, 1994. (Tr. 107). Apparent inconsistencies coupled with the lack of objective medical findings, questions the veracity of plaintiff's subjective complaints of pain.