**Alice Rae HUGHES, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 96–CV–829H.**

United States District Court,
W.D. New York.

Dec. 15, 1997.

Dennis A. Clary, Toohey & Dowd, P.C., Lewiston, NY, for Petitioner.

Jane B. Wolfe, U.S. Atty., Buffalo, NY, for Respondent.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Currently pending for decision is the Commissioner's motion for judgment on the pleadings (Item 10). For the following reasons, the motion is denied and plaintiffs claim is remanded to the Commissioner for further development of the record and reconsideration of plaintiff's application.

## *BACKGROUND*

Plaintiff was born on October 4, 1943 and

is currently 54 years old (T. at 70, 110).[1] She attended school through the eighth grade, but later obtained her GED in 1982 (T. at 148). She also attended Kelley Business School at some time in 1983 and 1984(Id.). Plaintiff has worked as a stock clerk, bookbinder, maid and cashier (T. at 70, 148). Plaintiff most recently was employed as a stock clerk, a position she held from 1989 until she was terminated in February 1992 (T. 70–71, 148). Her job involved pulling and issuing parts, and then logging the items into a computer (T. at 70–71, 148, 165).

Plaintiff first applied for disability insurance benefits and supplemental security income benefits on December 13, 1993 and April 22, 1994 respectively (T. at 110–12, 132–35). In her disability report, plaintiff stated that she was disabled as of February 4, 1993, because of pain in her back and irritable bowel syndrome (T. at 144). She also declared that she was first bothered by these conditions in December 1991, that the pain would come and go, and that she continued to work during that time (Id.). She described her condition since February 4, 1993, however, as one of severe pain and discomfort (Id.).

Plaintiff's applications were denied initially (T. at 113–15, 136) and on reconsideration (T. at 128–31, 137–40). She then requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held on December 15, 1994, January 24, 1995 and May 25, 1995, before ALJ Eric Glazer (T. at 54–109). Plaintiff was represented by counsel from the Niagara County Legal Aid Society (T. at 38, 42, 56, 62, 93). On June 12, 1995, ALJ Glazer found that plaintiff was not under a "disability" as defined in the Social Security Act and that her impairments did not prevent her from performing her past relevant work (T. at 34). This finding became the final determination of the Commissioner on November 7, 1996, when the Appeals Council denied plaintiff's request for review (T. at 3–4).

On December 6, 1996, plaintiff commenced this action *pro se* seeking reversal or remand of the Commissioner's final decision (Item 1). Plaintiff is currently represented by counsel.[2]

### *DISCUSSION*

Plaintiff asserts that the ALJ committed error in failing to develop the evidentiary record. that the ALJ mischaracterized plaintiff's testimony, and that the Appeals Council failed to consider supporting medical evidence submitted after the hearing.

### A. Judicial Review.

The Medicare Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. 405(g) (incorporated through 42 U.S.C. § 1395ii). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991). Under this standard, judicial review of the Secretary's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson, supra*, 402 U.S. at 401. The court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982). The Commissioner's determination cannot be upheld, however, when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

Thus, judicial review of the Commissioner's determination involves two levels of inquiry. First, the court must decide whether the correct legal principles were applied in

---

1. Page citations preceded by "T" refer to the transcript of the administrative record filed by defendant as part of his answer.

2. Plaintiff's counsel, Dennis A. Clary, Esq., states that plaintiff filed her complaint *pro se* after the Niagara County Legal Aid Society declined to file her Federal Court claim. Subsequently, Mr. Clary agreed to represent plaintiff in this action.

making the determination. *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Baybrook v. Chater,* 940 F.Supp. 668, 672 (D.Vt. 1996). Second, if correct legal principles were applied, the court must decide if the ALJ's decision is supported by substantial evidence. *Johnson, supra,* 917 F.2d at 985.

## B. Development of the Evidentiary Record.

Plaintiff's argument with respect to this issue is two-fold. First, plaintiff contends that the ALJ erred in failing to obtain plaintiff's medical records from her primary treating physician, Dr. Rim. Second, plaintiff claims that the ALJ erred when he stated his intention to order a gastrointestinal consultative examination and then failed to do so. These claims are addressed in turn.

### 1. Obtaining Treating Physician's Records.

In her disability report dated December 13, 1993, plaintiff identified two physicians she was seeing every two to three months, Dr. James Kropelin and Dr. Jong Rim. Plaintiff stated that she began seeing Dr. Kropelin in May of 1993, and Dr. Rim in September of 1990.

Plaintiff's hearing commenced on December 15, 1994. After a prehearing conference, ALJ Glazer adjourned the proceedings in order to allow plaintiff and her counsel time to submit further medical evidence (T. at 56–59).

The hearing was recommenced on January 24, 1995, at which time some additional treatment records were presented (T. at 64–65). Dr. Rim's records were not among those submitted, however. Plaintiff then began her testimony, where she identified Dr. Rim as her "general doctor" (T. at 80). With respect to her irritable bowel syndrome, plaintiff testified that her symptoms began sometime in 1992 and that she needs to use the lavatory "anywhere from eighteen to twenty times during the day and four to six times during the night" (T. at 85). ALJ Glazer again adjourned the hearing, this time in order to schedule a consultative examination with an orthopedic specialist regarding plaintiff's complaints of back pain, "with attention also to the problems of the irritable

bowel" (T. at 89). The following day, ALJ Glazer sent a confirming letter to plaintiff, stating that he had requested an examination by a specialist in orthopedics and gastrointestinal (T. at 37).

The hearing was recommenced again on May 23, 1995, at which time ALJ Glazer noted that "the claimant did finally receive an examination, but that we are lacking the focus on the problem relating to the irritable bowel syndrome" (T. at 93–95). Plaintiff continued her testimony. She stated that her bowel condition had been diagnosed by Dr. Kropelin, but that she went on to see her family physician, Dr. Rim, for that condition among other health problems (T. at 97–101). Plaintiff also testified that she began treating with Dr. Rim in 1990, and that she sees him every three months (104, 145).

In response to plaintiff's claim that ALJ Glazer erred in failing to obtain Dr. Rim's records, the government argues that the ALJ made "every effort" to develop the record, that it was incumbent upon plaintiff to produce her medical records, and that there is no indication that plaintiff's primary physician treated her for either back pain or irritable bowel syndrome. Furthermore, the government asserts that plaintiff has waived her right to raise this issue because she failed to assert this argument before the ALJ or the Appeals Council.

A claimant seeking disability benefits under the Social Security Act has the burden of proving that he or she is under a disability as defined by the Act. Before deciding whether the Commissioner's conclusions as to disability are supported by substantial evidence, however, this court must first determine whether the plaintiff has had a full hearing "in accordance with the beneficent purposes of the Act." *Echevarria v. Secretary of Health and Human Servs.,* 685 F.2d 751, 755 (2d Cir.1982) (quoting *Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir.1972)). Thus, the ALJ must affirmatively develop the record in light of the essentially non-adversarial nature of a benefits determination. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996); *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996) (both cases citing *Echevarria, su-*

*pra,* 685 F.2d at 755). This duty arises from the Commissioner's regulatory obligation to develop a complete medical record before making a disability determination. 20 C.F.R. § 404.1512(d)–(f) (1997): *Pratts, supra,* 94 F.3d at 37. With respect to a claimant's treating physicians, the regulations state as follows:

> Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application.... We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

20 C.F.R. § 404.1512(d). The regulations also state that:

> When the evidence we receive from your treating physician ... is inadequate for us to determine whether you are disabled, ... [w]e will first recontact your treating physician ... to determine whether the additional information we need is readily available.

*Id.* at § 404.1512(e). This duty exists whether the plaintiff is proceeding pro se, or is represented by counsel, as is the case here. *Perez, supra,* 77 F.3d at 47; *Baker v. Bowen,* 886 F.2d 289, 292 n. 1 (10th Cir.1989).

Based on the record presented, the ALJ did not fulfill his obligation in this regard. ALJ Glazer had the affirmative duty to either request that plaintiff submit her medical records, or attempt to obtain them himself. There is no indication that he did either, although plaintiff clearly identified Dr. Rim as her primary physician on more than one occasion.

The government argues that Dr. Rim treated plaintiff only for a thyroid condition, and that the absence of his records is therefore not fatal to plaintiff's case. In her disability report, plaintiff noted that Dr. Rim prescribed Orudis for her pain and made recommendations regarding pain management (T. at 145, 147). She also testified that she saw Dr. Rim regarding her irritable bowel syndrome and for her health problems generally (T. at 80, 97–104). There is simply no support in the record for the govern-

ment's assertion that "plaintiff acknowledged [that] Dr. Rim did not treat her for [pain in her back and irritable bowel syndrome]" (Item 14, p. 3).

As the government correctly points out, plaintiff did state that Dr. Rim had not restricted her in any way with respect to her activities (104). However, plaintiff had been out of work for one year prior to her alleged disability onset date. In addition, she testified that she had given up her former recreational activities and that her daily activities consisted of self-care and occasional visitation with family members. Given plaintiff's relative inactivity during the alleged period of disability, the fact that Dr. Rim did not limit her activities further can not be interpreted as, or substitute for, a medical opinion regarding disability.

 Finally, the government claims that plaintiff waived her right to raise this issue because she failed to assert this argument before the ALJ or the Appeals Council. In general, issues omitted from an administrative appeal are deemed waived for purposes of subsequent judicial review. *See Railway Labor Executives' Ass'n v. United States,* 791 F.2d 994, 1000 (2d Cir.1986) (citing *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952)). Although the government has not cited any social security disability cases where this rule has been applied, this court notes that a number of circuits have held the waiver rule applicable. *James v. Chater,* 96 F.3d 1341, 1344 (10th Cir.1996); *Pope v. Shalala,* 998 F.2d 473, 480 n. 6 (7th Cir.1993); *Harper v. Secretary of Health and Human Servs.,* 978 F.2d 260, 265 (6th Cir.1992); *Weikert v. Sullivan,* 977 F.2d 1249, 1254 (8th Cir.1992); *Ginsburg v. Richardson,* 436 F.2d 1146, 1152 (3d Cir.), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971); *Clagg v. Chater,* 70 F.3d 111, 1995 WL 679841, at *1 (4th Cir.1995); *Miller v. Shalala,* 54 F.3d 785, 1995 WL 299847, at *1 (9th Cir.1995).

This court was unable to locate any Second Circuit cases that have considered the administrative waiver issue in the context of a social security appeal. For that reason alone, it would be inappropriate to apply the

waiver doctrine advanced by the government to plaintiff's claim. There are due process concerns implicated by such action. Even were this court to consider enforcement of the waiver to be proper, plaintiff would not have received adequate notice of the rule's applicability and its adverse effects. *See James, supra,* 96 F.3d at 1343–44 (adopting rule of administrative waiver in social security cases, but rule to be applied prospectively upon sufficient notice to claimants).

■ In addition, the facts of this case do not require a determination on the waiver issue. The purpose of the administrative waiver is to ensure that the agency has notice of the claims against it, and the opportunity to consider the matters raised. *Railway Labor Executives' Ass'n. supra,* 791 F.2d at 1000. In the present case, plaintiff's attorney wrote a letter to the Appeals Council, dated July 18, 1995, objecting to the ALJ's failure to obtain a consultative gastrointestinal examination, and to his reliance upon the findings of consultative orthopedic physicians with respect to "plaintiff's most serious health problems" (T. at 21). Furthermore, the record reveals that plaintiff herself objected to the absence of Dr. Rim's records. In her request for reconsideration, plaintiff stated that "Social Security was unable to obtain the medical reports from my 2 main doctors—I was told that the doctors did not send in my reports. Please try to recontact them" (T. at 116). The hearing record now includes Dr. Kropelin s records, but not those of Dr. Rim.

In sum, the record presented to the Appeals Council included an objection to the ALJ's reliance on consultative physicians, and a specific request by plaintiff, made prior to the administrative hearing, that the agency obtain her treating physicians' records. Because the Commissioner did not lack notice of plaintiff's concerns regarding the sufficiency of the medical record, the administrative waiver rule would not apply in any event.

### 2. Failure to Order a Consultative Examination.

■ Under the Social Security regulations, an ALJ has discretion to order a consultative examination where he deems it is warranted. 20 C.F.R. § 404.1517. Several courts have held, however, that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is *required* to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision. *See Bowman v. Califano,* 482 F.Supp. 288, 295 (M.D.La. 1980) (citing *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir.1977)).

Applying this standard, I find that ALJ Glazer did not fulfill his obligation in accordance with the regulations. In fact, there is no need to examine the record here to determine whether, as plaintiff claims, a consultative gastrointestinal examination was necessary to render a decision. ALJ Glazer himself concluded this was so. He adjourned the January 25, 1995 hearing specifically for the purpose of scheduling a consultative examination with an orthopedic specialist, "with attention also to the problems of the irritable bowel" (T. at 89). In addition, ALJ Glazer sent a confirming letter to plaintiff, stating that he had requested an examination by a specialist in orthopedics and gastrointestinal (T. at 37).

When the hearing resumed on May 23, 1995, plaintiff had been seen by an orthopedic specialist only. ALJ Glazer acknowledged that "we are lacking the focus on the problem relating to the irritable bowel syndrome" (T. at 93). Despite this admitted gap in the evidence. however, he proceeded with a determination on plaintiff's disability.

For all of the reasons set forth above, I find that ALJ Glazer failed to fulfill his obligation to develop the evidentiary record. Accordingly, the government's motion for judgment on the pleadings is denied and plaintiff's claim is remanded to the Commissioner for further development of the record and reconsideration of plaintiff's application.

### C. Mischaracterization of Plaintiff's Testimony.

■ In response to the government's motion, plaintiff claims that ALJ Glazer erroneously characterized plaintiffs testimony to make it appear that medication had resolved

her irritable bowel syndrome and that she was able to perform all of her activities with no difficulty.

With respect to the irritable bowel syndrome, the ALJ basically quoted plaintiff's testimony when he noted in his decision that "the medication prescribed by her doctor for her symptoms has improved the sickening feeling associated with [that] syndrome" (T. at 33 and 101).

As to plaintiffs daily activities, the ALJ noted that plaintiff had to give up hobbies such as dancing and tennis because of back pain. The ALJ also noted that plaintiff "cooks, cleans, drives and socializes on a regular basis" (T. at 33). Upon review of the record. I find that all of these statements are consistent with plaintiff's testimony.

In sum, there is no indication that the ALJ questioned plaintiffs credibility or that he failed to consider her testimony. Indeed, although plaintiff argues that the ALJ ignored her testimony as to the difficulties she experiences in performing daily activities, ALJ Glazer specifically acknowledged testimony that plaintiffs back pain is exacerbated by any type of lifting (T. at 32).

Accordingly, I find that there was no error in this regard.

### D. Failure to Consider Subsequent Submissions.

ALJ Glazer found that as of June 12, 1995, plaintiff was not disabled and that she was capable of performing light work. Plaintiff argues that records which were submitted to the Appeals Council regarding a CAT scan of plaintiff's lumbosacral spine, surgery related to an ovarian mass, and a disability determination by the Niagara County Department of Social Services warranted remand to the ALJ. I disagree.

In promulgating 20 C.F.R. § 404.970(b), the Commissioner expressly authorized claimants to submit new evidence to the Appeals Council. The regulation states as follows:

(b) If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the

administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently on record.

Thus, while new evidence is permitted, it must relate to the period on or before the ALJ's decision.

The CAT scan was performed in April of 1996, approximately ten months after ALJ Glazer issued his decision. It revealed slight disc bulging and narrowing of the lateral recesses at the L4–5 level. The reviewing physician concluded that "slight bulging of the disc may cause significant symptoms in this kind of patient" (T. at 10). However, the report does not contain any medical history, does not relate back to the alleged disability onset date, nor does it contain any opinion as to plaintiff's disability. It therefore does not contradict the ALJ's finding that plaintiff was capable of performing light work as of June 12, 1995.

The same is true with respect to the diagnosis and surgery related to plaintiff's ovarian mass (T. at 12–19). The records are dated July 19, 1995 through October 3, 1995, all subsequent to the ALJ's decision. While plaintiff speculates that the fibroid tumor which was detected could have caused her abdominal complaints, the record contains no medical support for this suggestion. Dr. Defazio, the physician who treated plaintiff for this condition, did not relate this condition to plaintiff's other physical complaints, nor did he render any opinion as to disability. In sum, these submissions do not contradict the ALJ's finding that plaintiff is not disabled.

As for plaintiff's claim that his determination of disability for the purpose of Medicaid eligibility should have been considered, it is clear that such decisions by any other governmental or nongovernmental agencies are not binding on the Commissioner, 20 C.F.R. § 404.1504.

Accordingly, I find that the evidence submitted to the Appeals Council did not provide conclusive grounds for remand to the ALJ, and there was no error in this regard.

### CONCLUSION

For the reasons stated above, the government's motion for judgment on the pleadings **(Item 10)** is DENIED. Furthermore, plaintiff's claim is remanded to the Commissioner for further development of the record and reconsideration of plaintiff's application.

**SO ORDERED.**