Jessica Monge OCASIO, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

No. 11–CV–800 (VEB).

United States District Court, N.D. New York.

Filed Nov. 13, 2012.

Signed Nov. 15, 2012.

Howard D. Olinsky, Olinsky Law Group, Syracuse, NY, for Plaintiff.

Maria P. Fragassi Santangelo, John M. Kelly, Social Security Administration, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR E. BIANCHINI, United States Magistrate Judge.

### I. INTRODUCTION

In April of 2009, Plaintiff Jessica Monge Ocasio applied for disability and disability insurance benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since May of 2005 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, Olinsky Law Group, Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commission-

er's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

On October 30, 2012, the parties, by and through their respective counsel of record, consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Docket No. 18).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on April 9, 2007, alleging disability beginning on May 15, 2005. (T at 88–91, 105).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Syracuse, New York, on July 28, 2009, before ALJ Michael Devlin. (T at 21). Plaintiff appeared with her attorney and testified. (T at 27–50).

On December 23, 2009, ALJ Devlin issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 9–20). The ALJ's decision became the Commissioner's final decision on May 20, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1–4).

Plaintiff, through counsel, timely commenced this action on July 13, 2011. (Docket No. 1). The Commissioner interposed an Answer on January 23, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on March 8, 2012. (Docket No. 11). The Commissioner filed a Brief in opposition on May 14, 2012. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is dismissed.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler,* 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind

---

**1.** Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

**2.** General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

 If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. *See* 20 C.F.R. §§ 416.920, 404.1520.

The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140–142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. *See Bowen*, 482 U.S. at 146 n. 5, 107 S.Ct. 2287; *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B. Analysis

### 1. Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social

---

**3.** This five-step process is detailed as follows: First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience;

the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Security Act through September 30, 2010 (the "date last insured") and had not engaged in substantial gainful activity since May 15, 2005 (the "alleged onset date"). (T at 11). The ALJ concluded that Plaintiff had the following "severe" impairments, as defined under the Act: lumbrosacral degenerative disc disease; herniated lumbosacral disc with radiculopathy, cervical spondylosis, and right carpal tunnel syndrome. (T at 11–16).

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 16–17).

The ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry 10 pounds occasionally and less than 10 pounds frequently, walk/stand for about 2 hours in an 8–hour workday, push/pull up to 10 pounds, sit for about 6 hours in an 8–hour workday, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and frequently handle and finger with the right arm wrist. (T at 17–19).

The ALJ found that Plaintiff could not perform her past relevant work as a machine operator, because that job required the performance of work-related activities precluded by Plaintiff's residual functional capacity. (T at 19).

Considering Plaintiff's age (26 years old on the alleged onset date), education (high school), work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T at 19–20).

Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act between the alleged onset date and the date of his decision (December 23, 2009) and was therefore not entitled to benefits. (T at 20). As noted above, the ALJ's decision became the Commissioner's final decision on May 20, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1–4).

**2. Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments in support of her position. First, Plaintiff contends that the ALJ should have ordered a consultative psychiatric evaluation. Second, Plaintiff challenges the ALJ's residual functional capacity ("RFC") determination. Third, Plaintiff contends that the ALJ did not properly assess her credibility. Fourth, Plaintiff argues that the ALJ's step five analysis is not supported by substantial evidence. This Court will address each argument in turn.

**a. Consultative Psychiatric Evaluation**

█ The ALJ has discretion to order a consultative examination to further develop the evidentiary record. *See Serianni v. Astrue,* No. 6:07–CV–250, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010) (citing *Hughes v. Apfel,* 992 F.Supp. 243, 248 (W.D.N.Y.1997) (citing 20 C.F.R. § 404.1517)). "Several courts have held … that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision." *Id.* (citations omitted).

█ Generally, the ALJ should order a consultative examination when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved." *Id.* (quoting *Matejka v. Barnhart,* 386 F.Supp.2d 198, 209 (W.D.N.Y.2005)) (other citations omitted); *see also Cruz v. Shalala,* No. 94 Civ. 0929, 1995 WL 441967, *5 (S.D.N.Y. July 26, 1995). However, the

ALJ "is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination." *Id.* (citing *Cruz,* 1995 WL 441967, at *5).

■ In the present case, Plaintiff argues that the ALJ should have ordered a consultative psychiatric evaluation. In support of this argument, Plaintiff points to the following evidence:

In a March 24, 2006 treatment note, Dr. Stephen Robinson, Plaintiff's treating orthopedist, indicated that Plaintiff had "[p]sychiatric problems," including "depression." (T at 308). In June of 2006, Dr. Mahesh Kuthuru, a treating pain specialist, noted that Plaintiff reported being depressed. (T at 267). In September of 2008, Dr. Kuthuru indicated a diagnosis of "depression/anxiety." (T at 403). During the administrative hearing, Plaintiff testified that she experiences a lack of motivation, caused by depression. (T at 37–38).

Without ordering a consultative psychiatric examination, the ALJ concluded that Plaintiff's depression was not a severe impairment. (T at 16). This Court finds that the ALJ's decision was supported by substantial evidence and consistent with applicable law.

Plaintiff did not identify depression as a disabling condition in her original disability report. (T at 105). Aside from the limited references above, Plaintiff does not cite to documented complaints and/or treatment related to depression. Neither Dr. Robinson nor Dr. Kuthuru identified any work-related limitations arising from Plaintiff's depressive symptoms. Indeed, Dr. Kuthuru's September 2008 report indicating a diagnosis of depression also described Plaintiff as working part-time. (T at 403). In an earlier report (from June of 2006), Dr. Kuthuru noted that Plaintiff claimed to be depressed, but indicated that she denied suicidal ideation and denied

seeking psychiatric treatment. (T at 267). Dr. Robinson, who treated Plaintiff several times over an extended period, consistently described Plaintiff's mood as "appropriate." (T at 271, 277, 283, 290, 301).

This constitutes substantial evidence sufficient to support the ALJ's finding that Plaintiff's depression was a non-severe impairment. *See Serianni,* 2010 WL 786305, at *4 (finding ALJ's decision supported by substantial evidence because claimant did not allege any disabling mental impairment in application, was never examined or treated by a mental health professional, was never referred to a mental health professional, and treating physicians' indications of depression were not associated with any work-related limitations).

Further, because there is no evidence that Plaintiff's depression limited her ability to function in any significant way, this Court finds no error in the ALJ's failure to obtain a consultative psychiatric examination. *Id.* at *5–6; *see also Haskins v. Comm'r of Soc. Sec.,* No. 05–CV–292, 2008 WL 5113781, at *7, n. 5 (N.D.N.Y.2008) ("If the evidence does not support work-related functional limitations resulting from the possible mental impairment, additional mental development is not necessary and completion of a Psychiatric Review Technique Form is not required and review by a psychiatrist or psychologist is not necessary"). Accordingly, this aspect of the ALJ's decision is sustained.

**b. Residual Functional Capacity**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of

the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. *LaPorta v. Bowen*, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

As discussed above, the ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry 10 pounds occasionally and less than 10 pounds frequently, walk/stand for about 2 hours in an 8–hour workday, push/pull up to 10 pounds, sit for about 6 hours in an 8–hour workday, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and frequently handle and finger with the right arm wrist. (T at 17–19).

Plaintiff challenges the ALJ's RFC determination. In particular, Plaintiff argues that the ALJ did not properly account for the records provided by Stephen Robinson, a treating orthopedist. Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir.

2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. 20 C.F.R. § 404.1527(d)(1)-(6); *see also de Roman*, 2003 WL 21511160, at *9; *Shaw*, 221 F.3d at 134; *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998); *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir.1998).

In this case, although Dr. Robinson did not provide a function-by-function assessment of Plaintiff's RFC, the ALJ nevertheless afforded "significant weight" to Dr. Robinson's opinion (T at 19). Plaintiff argues that the ALJ should have sought a function-by-function assessment from Dr. Robinson and should have identified more precisely which of Dr. Robinson's opinion he was relying on. Plaintiff also suggests that ALJ misread certain evidence and did not give sufficient weight to the opinion provided by Dr. Kuthuru, who indicated that Plaintiff had "marked total disability." (T at 200).

The Court finds Plaintiff's arguments unavailing. Dr. Robinson's treatment notes and the other evidence of record provide sufficient support for the ALJ's RFC determination. In April of 2009, Dr.

---

**4.** "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." *de Roman v. Barnhart*, No. 03–Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Robinson noted Plaintiff's history of low back and leg pain and indicated that Plaintiff could not perform her past work as a machine operator. (T at 551–52). However, Dr. Robinson described Plaintiff as working at "light/partial duty" and did not suggest or state that he believed such duty was inconsistent with Plaintiff's limitations. (T at 552). In a July 2009 treatment note, Dr. Robinson noted that Plaintiff had been "taken out of work by her chiropractor," but indicated that he did not share that view and opined that Plaintiff was temporarily and partially (50%) disabled. (T at 550).[5]

Dr. Mahesh Kuthuru, a treating pain management specialist, initially examined Plaintiff in July of 2005 and assessed "marked total disability." (T at 200). In April of 2007, Dr. Kuthuru indicated "Marked disability" and described Plaintiff as "currently not working." (T at 264). However, Dr. Kuthuru's opinion was contradicted by the assessment of Dr. Robinson (who treated Plaintiff more frequently) and by several other medical sources.

In August of 2007, Dr. Paul Kerschner, a chiropractor, performed an independent medical examination in connection with Plaintiff's claim for workers' compensation benefits. Dr. Kerschner opined that Plaintiff was capable of "sedentary light-duty work with limitations of no lifting in excess of 10 pounds, no repetitive light, no bending or stopping," provided Plaintiff was permitted to change positions as needed. (T at 518). Although a chiropractor is not considered an "acceptable medical source" under the Social Security Regulations, a chiropractor's opinion may be considered as to the severity of a claimant's impairments and the ALJ acted within his discretion in affording Dr. Kerschner's opinion some weight. (T at 18–19).[6]

In an undated letter, Dr. James Walzer, a treating chiropractor, noted that Plaintiff was under his care for a job-related injury that resulted in chronic lumbar strain/sprain and lumbar vertebral disc herniation with nerve root compression. (T at 494). Dr. Walzer opined that chiropractic treatment had allowed Plaintiff "to return to work with minimal discomfort," although he noted that Plaintiff would "experience an occasional exacerbation of the injury." (T at 494).

Dr. Louis Nunez, a orthopedic surgeon, conducted an independent medical examination in November of 2007. Dr. Nunez diagnosed mysofascial lumbosacral strain, mild disc degeneration at L5–S1, and (by history) L5–S1 radiculopathy on left and

---

**5.** To be disabled under the Social Security Act, a claimant must be totally disabled such that he or she cannot perform any substantial gainful activity. *See* 42 U.S.C. § 423(d); *see also Stephens v. Heckler,* 766 F.2d 284 (7th Cir.1985). ("A person with a partial disability for purposes of workers' compensation is "not disabled" under the Social Security Act, and even a person entitled to collect substantial damages because he cannot find any employment may be deemed 'not disabled.' "); *Gray v. Chater,* 903 F.Supp. 293, 299, 301, n. 7, 8 (N.D.N.Y.1995) ("The issue of disability for purposes of workers' compensation is different from the issue of disability for purposes of [DIB] and SSI benefits. Workers' compensation determinations are directed to the worker's prior employment and measure the ability to perform that employment rather than using the definition of disability in the ... Act. Moreover, there is no such thing as partial disability for purposes of the Social Security Act.") (citations omitted).

**6.** There are five categories of "acceptable medical sources" defined in the Social Security Regulations. *See* 20 C.F.R. § 404.1513(a). Chiropractors are not included among the "acceptable medical sources" and their opinions are not entitled to any special weight. Rather, chiropractors are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913(d)(1).

right sides. (T at 432). He opined that Plaintiff had a "mild partial disability" and could return to work "at any time with a work restriction of no lifting more than 25 pounds." (T at 433).

Dr. Kalyani Ganesh performed a consultative orthopedic examination in May of 2007. Dr. Ganesh noted a history of herniated discs and low back pain, but found no gross limitation as to sitting, standing, walking, or the using of upper extremities. (T at 370). He assessed mild limitation with respect to lifting, carrying, pushing, and pulling. (T at 370).

The ALJ noted that Plaintiff worked in the shoe department at K–Mart 20 hours per week between June 2008 and July 2009. (T at 18). He also referenced Plaintiff's ability to perform many activities of daily living (including cooking, cleaning, and laundry). (T at 18).

■ As noted above, Plaintiff contends that the ALJ misread the evidence. Further, Plaintiff argues that the ALJ should have given more weight to Dr. Kuthuru's opinion that Plaintiff had "marked total disability." (T at 200). However, "[c]onflicts in evidence ... are for the Commissioner to resolve." *White v. Comm'r of Social Security,* No. 06–CV–0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing *Fiorello v. Heckler,* 725 F.2d 174, 176 (2d Cir.1983)). If there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. *Id.* Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." *Id.* Here, the ALJ's decision was supported by assessments from Dr. Robinson, Dr. Kerschner, Dr. Walzer, Dr. Nunez, and Dr. Ganesh, as well as Plaintiff's work history and activities of daily living. This Court finds this evidence to have sufficient

probative force to support the ALJ's decision to discount Dr. Kuthuru's opinion and to sustain the ALJ's findings regarding Plaintiff's RFC.

### c. Credibility

■ Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. *See Ber v. Celebrezze,* 332 F.2d 293 (2d Cir.1964). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. *See Brandon v. Bowen,* 666 F.Supp. 604, 609 (S.D.N.Y.1987).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96–7p; *Gernavage v. Shalala,* 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

■ "An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel,* 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96–7p:

First, the adjudicator must consider whether there is an underlying medically determinable physical or medical im-

pairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms....

Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

▮ If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Young v. Astrue*, No. 7:05–CV–1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987)).

▮ In the present case, Plaintiff testified as follows: She experiences low back and neck pain that radiates down her arms and legs. (T at 36–37). Her pain is constant and she is frequently fatigued. (T at 37). She suffers from depressions, which causes a lack of motivation. (T at 38). Plaintiff can sit in a chair for approximately fifteen minutes before needing to change positions. (T at 40). She can stand for 20 minutes before needing to sit down. (T at 40). She can lift approximately 5 to 10 pounds. (T at 41). Plaintiff has trouble with stairs. (T at 43). Her pain is usually an 8 or 9 on a scale of 1–10 and causes sleep difficulties. (T at 46).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effect of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T at 18).

This Court finds that the ALJ's credibility assessment is supported by substantial evidence. As outlined above, the ALJ's RFC determination was consistent with (and Plaintiff's testimony was contradicted by) the findings of Dr. Robinson (T at 550, 551–52), Dr. Kerschner (T at 518), Dr. Walzer (T at 494), Dr. Nunez (T at 433), and Dr. Ganesh (T at 370).

The ALJ carefully reviewed and considered Plaintiff's testimony concerning the nature, extent, and limiting effect of her pain. (T at 17–18). As the ALJ noted, although Plaintiff reported constant, severe pain and an inability to lift more than 10 pounds, this testimony was contradicted by substantial medical evidence. The ALJ referenced the lack of MRI results or clinical findings to support the ALJ's allega-

tions. (T at 18). In addition, Dr. Robinson, a treating physician, opined that Plaintiff's disability was temporary and partial. (T at 550). Dr. Kerschner stated that Plaintiff was capable of "sedentary light-duty work with limitations of no lifting in excess of 10 pounds, no repetitive lifting, no bending or stooping," provided Plaintiff was permitted to change positions as needed. (T at 518). Dr. Walzer, a treating provider, reported that Plaintiff could generally "return to work with minimal discomfort...." (T at 494). Dr. Nunez opined that Plaintiff could return to work "at any time with a work restriction of no lifting more than 25 pounds." (T at 433). Dr. Ganesh, a consultative examiner, assessed mild limitation with respect to lifting, carrying, pushing, and pulling. (T at 370). As the ALJ noted, Plaintiff worked in the shoe department at K–Mart 20 hours per week between June 2008 and July 2009 and performed various activities of daily living (including cooking, cleaning, and laundry). (T at 18).

 "It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted).

Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. *See Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir.1999) (citing *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y.

1985)); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir.1999).

 There is no question that Plaintiff lives with pain. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. *See e.g. Mimms v. Sec'y of Health and Human Servs.*, 750 F.2d 180, 186 (2d Cir.1984). The ALJ's credibility determination is therefore be upheld.

### d. Use of the Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in *Zorilla v. Chater*, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

*Id.*

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at 667 n. 2; *see* 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996); *Bapp v. Bowen*, 802 F.2d 601, 604–605 (2d Cir.1986).

In this case, the ALJ used the framework of Medical–Vocational Rule 201.28 in reaching his disability determination. (T at 20). Plaintiff challenges this aspect of the ALJ's decision, by reiterating her criticisms of the ALJ's RFC determination. For the reasons outlined above, this Court finds that substantial evidence supports the ALJ's RFC determination and, thus, finds no error with regard to the ALJ's application of the Grids at step 5 of the sequential evaluation.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiner, and independent medical examiners, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, the Commissioner is GRANTED judgment on the pleadings and Plaintiff's motion for judgment on the pleadings is DENIED.

## V. ORDERS

It is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is GRANTED; Plaintiff's motion for judgment on the pleadings is DE-

NIED; and the Clerk of the Court shall close this case.

SO ORDERED.